**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 20-376 |
| TROY MARTIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

Presently before the Court is a Motion to Suppress Physical Evidence and Second Motion to Suppress Evidence related to cell phones, (Docket Nos. 37, 38, 46, 47), filed by Defendant Troy Martin ("Defendant"). The Government filed Responses in opposition thereto, and the Court held a motion hearing on March 23, 2022, the official transcript of which was filed of record. (Docket Nos. 43, 58, 71, 73). At the Court's direction, on May 23, 2022, the parties submitted post-hearing proposed findings of fact and conclusions of law relative to Defendant's Motion to Suppress Physical Evidence, and Defendant filed a supplemental brief in support of the Motion to Suppress Evidence related to cell phones on that same date. (Docket Nos. 74, 75, 76). Neither party filed a response to the opposing party's post-hearing submissions by the established deadline of June 22, 2022, (*see* Docket No. 72), thus the Court then took the matter under advisement. After careful consideration of all of the parties' submissions, the transcript of the proceedings and the credible evidence of record, and for the following reasons, Defendant's Motion to Suppress Physical Evidence will be granted. Given that ruling, his Second Motion to Suppress Evidence related to cell phones will be denied as moot.

## II.   BACKGROUND

### A.   Procedural History

On December 1, 2020, Defendant was charged in a two-count Indictment with the following: possession with intent to distribute a quantity of a mixture and substance containing a detectable amount of heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), for conduct occurring on or about January 24, 2019 (Count One); and possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), for conduct occurring on or about February 2, 2019 (Count Two). (Docket No. 1). Defendant subsequently was arraigned and pled not guilty to the charges on January 27, 2021. (Docket Nos. 15, 16).

Following Defendant's arraignment, he requested and was granted a number of extensions of time to file pretrial motions. Ultimately, Defendant filed the Motion to Suppress Physical Evidence and the Motion to Suppress Evidence related to the search of two cell phones on July 27, 2021 and November 9, 2021, respectively. (Docket Nos. 37, 46). The Government filed responses to Defendant's Motions on October 11, 2021 and January 7, 2022. (Docket Nos. 43, 58).

On January 31, 2022, the case was reassigned to this member of the Court when Judge Donetta Ambrose assumed senior inactive status. The Court subsequently held a telephone conference of counsel to receive an update on the status of the case and to discuss scheduling a hearing and oral argument on Defendant's Motions. (Docket No. 61). As stated, the Court held the hearing and oral argument on March 23, 2022, (Docket No. 71), all supplemental briefing is complete, and the matter is now ripe for disposition.

### B.   Facts

As discussed in more detail below, at issue here is whether law enforcement had reasonable suspicion to seize Defendant such that the subsequent search of his vehicle and his person

following his arrest were lawful.  At the suppression hearing, the Government called City of Pittsburgh Police Detective Devin McGee, who testified concerning the events bearing on the matters at issue and was subject to cross-examination concerning same.  (*See* Docket Nos. 71, 73). Defendant testified on his own behalf, was subject to cross-examination, and also entered three exhibits into evidence.  (*See id.*; Docket Nos. 71-1; 71-2).

At a hearing on a motion to suppress, it is well-settled that "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. Richardson*, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) (citations omitted).  To that end, as finder of fact, the Court "is free to accept or reject any or all of a witness's testimony." *United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005) (citation omitted).  "Credibility determinations are to be made in consideration of numerous factors, including the witness's demeanor and manner while on the stand, the witness's ability to accurately recollect the matters at hand, the manner in which the witness may be affected by the outcome, the extent to which the witness's testimony is either supported or contradicted by other evidence and testimony in the case, and, ultimately, the extent to which it withstands a common sense test of reason and logic." *Id.*  When a defendant testifies, his credibility is to be judged in the same way as any other witness, and a witness's testimony is not to be judged more or less credible because the witness is a law enforcement officer. *Id.* at 569-70 (citations omitted).  In view of these principles, the Court finds that the testimony of both Detective McGee and Defendant concerning the events that unfolded on the date in question was only partially credible as will be explained in more detail below.

Turning to the testimony adduced at the suppression hearing, Detective McGee has been employed by the Pittsburgh Police since 2011, initially working as a uniform patrol officer, and

then moving to a plain clothes position, which involved addressing quality of life issues, narcotics, firearms violations, and assisting with homicide and robbery investigations, as well as other high profile cases in Zone 2 covering the Hill District, Uptown, Downtown, the Strip District and Lawrenceville.  (Docket No. 73 at 7-8).  Detective McGee worked in that capacity until 2019, when he was assigned to his current position in narcotics, in which he investigates narcotics sales and firearms violations and assists with homicide and robbery investigations in all sections of the city.  (*Id.* at 8).  Detective McGee has participated in hundreds of arrests during his career, and, as a result, he has become familiar with the smell of both fresh and burnt or used marijuana.  (*Id.* at 9-10).  To that end, Detective McGee testified that he interacted with individuals who smelled of marijuana almost daily while working in the Hill District.  (*Id.* at 10).

Moving on to the events of January 24, 2019, Detective McGee was working in plain clothes with his police badge around his neck and was driving an unmarked sedan, with his partners, Detectives Mammarelli, Anderson and Baker.  (Docket No. 73 at 10-11).  At approximately 6:38 p.m. that evening, the detectives executed a traffic stop of a vehicle in the Hill District on Chauncey Drive, which is a one-way street with angled parking spots along the side.  (*Id.* at 11-12; *see also* Docket No. 71-2 at 1-4).  Detective McGee testified that he is called to that area several times a day for crimes such as homicides, shootings, aggravated assaults, firearm violations and open air narcotics sales.  (Docket No. 73 at 12, 26).

Relative to the traffic stop itself, the driver of the traffic stop vehicle pulled into an angled parking spot next to another vehicle which was parked to its left.  (Docket No. 73 at 13).  Detective McGee parked behind the traffic stop vehicle in a manner that prevented the vehicle from backing out and leaving.[1]  (*Id.* at 14).  All four detectives then approached the traffic stop vehicle, and

---

1       On cross-examination, Detective McGee testified concerning Defendant's Exhibit C, which is a photograph depicting three vehicles parked "essentially almost" how Detective McGee's police vehicle, the traffic stop vehicle,

Detective McGee engaged the driver, while one detective went to another position on the driver's side of the vehicle and two detectives went to the passenger side. (*Id.* at 14, 32). Detective McGee did not believe that any of the detectives had their firearms displayed. (*Id.* at 15, 32).

While speaking with the driver of the traffic stop vehicle, Detective McGee was positioned between that vehicle and another vehicle to its left, which was a white Acura with window tint. (Docket No. 73 at 15, 17). The driver's side of the traffic stop vehicle was approximately five feet away from the passenger side of the other vehicle. (*Id.* at 16). Detective McGee testified that he kept an eye on the other vehicle because "something sparked [his] interest . . . the car was either running or the lights were on . . . ." (*Id.* at 15-16). Detective McGee further testified that he heard the glove box shut, and he saw the silhouette of a hand near the glove box area on the passenger side of the vehicle, but he did not see the person, who he later recognized as Defendant, shut the glove box. (*Id.* at 16-17, 33). As Detective McGee explained, there are street lights in the area, but it is difficult to see unless you are under one that provides illumination. (*Id.* at 27). In this instance, although the vehicle's windows were tinted, the lighting situation in the area was enough for Detective McGee to see the silhouette. (*Id.* at 17).

After Detective McGee heard the noise of the glove box, he either shined his flashlight into the passenger side window or tapped on the window, which prompted Defendant, who was the sole occupant of the vehicle, to lower the passenger window without any further orders by Detective McGee. (Docket No. 73 at 17, 34-35, 37, 42). Detective McGee testified that he was familiar with Defendant from a prior interaction and through word of mouth, and Defendant was

---

and the vehicle to its left, which turned out to be Defendant's vehicle, were parked. (Docket Nos. 71-2 at 5; 73 at 29-30). As Detective McGee testified, he could not recall whether his police vehicle was blocking Defendant's vehicle from leaving, but he thought "[Defendant] probably could have maneuvered out of there." (Docket No. 73 at 20, 30). Nonetheless, it was not Detective McGee's intent to park his vehicle in a manner to block Defendant's vehicle, a point which defense counsel conceded on cross-examination. (*Id.* at 20, 30).

known to carry firearms. (*Id.* at 18-19, 27). However, Defendant did not display any violent behavior and was compliant when Detective McGee had previously interacted with him. (*Id.* at 27). On this occasion, Detective McGee did not observe Defendant engage in any illegal activity prior to the time the window was lowered. (*Id.* at 37). When the window was lowered, however, Detective McGee smelled a "pretty heavy" odor of burnt marijuana emanating from the vehicle. (*Id.* at 18, 19, 35, 37). Despite smelling an odor of marijuana, Detective McGee did not see smoke coming out of the window, nor did he observe Defendant discard a marijuana cigarette butt out the window. (*Id.* at 36).

After Defendant lowered the window and Detective McGee smelled marijuana, he approached the driver's side of the vehicle to speak with Defendant. (Docket No. 73 at 18). Detective McGee did not have his firearm drawn when he approached Defendant, but his hand could have been on the butt of the firearm. (*Id.* at 21-22, 39). Detective McGee made small talk with Defendant in a normal tone of voice to ease any tensions, opened the door of the vehicle and asked Defendant to exit, and Defendant complied. (*Id.* at 20-21, 22, 37). Detective McGee placed Defendant in handcuffs to detain him, and Defendant did not resist. (*Id.* at 21, 22). Detective McGee next did a protective frisk of Defendant but did not recover anything at that time, and then he searched the vehicle. (*Id.* at 21, 38, 42). When Defendant was removed from the vehicle, Detective McGee could smell marijuana on him and coming from the car. (*Id.* at 23). On cross-examination, Detective McGee conceded that the air in the area where he encountered Defendant smells like marijuana at times, but it was his opinion that the odor of marijuana on the evening in question was coming from Defendant's vehicle, not the area. (*Id.* at 26-27, 37).

Detective McGee immediately went to the glove box because he was concerned that it contained a weapon. (Docket No. 73 at 23, 38). Detective McGee testified that the glove box was

locked, so he asked Defendant if he had the key and Defendant indicated it was in his pocket.  (*Id.* at 42).  Detective McGee removed the key from Defendant's pocket and opened the glove box, wherein he found eight bricks of packaged heroin (or approximately 450 individual stamp bags) in loose wrapping paper.  (*Id.* at 23-24, 38-39, 43).  A search of other areas of the vehicle uncovered a black ZTE smartphone in the driver's door.  (*Id.* at 24-25).  Detective McGee also observed in the vehicle packaged cigar blunt wrappers, which are used to smoke marijuana, but he could not remember whether or not the package of cigar wrappers was open. (*Id.* at 23, 36).  However, no marijuana was found in the vehicle when it was searched.  (*Id.* at 35).

After the heroin was recovered from the glove box, Detective McGee placed Defendant under arrest and then searched his person, which revealed another cell phone and United States currency.  (Docket No. 73 at 25, 43).  Given the amount of heroin recovered, along with the two cell phones and United States currency, Detective McGee charged Defendant with possession with intent to distribute a controlled substance.  (*Id.* at 25).

Defendant's testimony as to the events of January 24, 2019 differs somewhat from that of Detective McGee.  When the traffic stop vehicle pulled next to Defendant's vehicle, his engine was running and he was about to leave, but he was unable to do so because he was blocked in by the police vehicle.  (Docket No. 73 at 46, 51-52).  Defendant testified that he had been sitting in the car "[f]or like five minutes" "[g]etting ready to leave" and warming up because it was winter.  (*Id.* at 49-50).

Defendant noticed that Detective McGee approached the traffic stop vehicle on its driver's side, which was a few feet away from the passenger side of his vehicle.  (Docket No. 73 at 51-52).  Defendant testified that he did not close the glove box or make any motion toward the glove box.  (*Id.* at 52).  According to Defendant, Detective McGee left the driver's side of the traffic stop

vehicle and approached the driver's side of Defendant's vehicle with his hand on his holstered firearm, shined his flashlight into the driver's side window of the vehicle, and signaled for Defendant to lower his window by motioning and tapping on the window. (*Id.* at 46-47, 53-54). Defendant felt that he had to lower his window, and he did so. (*Id.* at 47, 48). Prior to lowering his window, Defendant did not feel that he was free to leave. (*Id.* at 48). Additionally, Defendant testified that he did not smoke marijuana in the vehicle or before getting in it, and the vehicle did not smell like marijuana to him. (*Id.* at 48, 50).

Defendant described having a calm interaction and conversation with Detective McGee. (Docket No. 73 at 55-56). After Defendant was removed from the vehicle, the Detectives handcuffed him in the front, patted him down to check for any weapons, and pulled the key to the locked glove box out of his pocket without asking his permission to do so. (*Id.* at 48, 56). According to Defendant, Detective McGee then went into the vehicle and unlocked the glove box. (*Id.* at 56-57).

It is this Court's opinion that the foregoing fairly summarizes the witnesses' testimony adduced at the suppression hearing. As noted at the outset, the Court does not credit certain aspects of each witnesses' version of events, as will be discussed below where relevant.

## III.   MOTION TO SUPPRESS PHYSICAL EVIDENCE

By his Motion to Suppress Physical Evidence, (Docket No. 37), Defendant seeks to suppress evidence seized from his vehicle and his person by law enforcement on January 24, 2019, because he claims that he was unlawfully seized, frisked and arrested and his vehicle was unlawfully searched in violation of the Fourth Amendment. This evidence includes eight bricks of heroin, $379 in United States currency and two cell phones. (*See generally* Docket Nos. 37, 38, 75). The Government counters that no Fourth Amendment violation occurred because the police

were permitted to approach Defendant, and he was not seized when he lowered his window; the police later had reasonable suspicion to detain Defendant and had probable cause to search his vehicle and seize him after drugs were found in the vehicle; and a search of his person, incident to arrest, was lawful.  (*See generally* Docket Nos. 43, 74).  For reasons that follow, the Court finds that a Fourth Amendment violation occurred when Detective McGee seized Defendant without reasonable suspicion that criminal activity was afoot, which therefore warrants suppression of all evidence obtained as a result of the ensuing search of his vehicle and his person from use as evidence at trial in this case.

### A. <u>Legal Standard</u>

The Fourth Amendment protects citizens against unreasonable searches and seizures.  U.S. CONST. amend. IV.  In order to suppress evidence, the defendant has the burden of establishing that his Fourth Amendment rights were violated.  *United States v. Acosta*, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992).  "However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable."  *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citation omitted).  The burden of proof is preponderance of the evidence.  *United States v. Mastronardo*, 987 F. Supp. 2d 569, 575 (E.D. Pa. 2013) (citing *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974)).

Here, it is undisputed that law enforcement searched Defendant's vehicle and subsequently arrested and searched him without a warrant.  Therefore, it is the Government's burden to show by a preponderance of the evidence that the initial stop and seizure of Defendant and the subsequent search of his vehicle and his person following his arrest were reasonable.  For reasons that follow, the Court finds that the Government has not sustained its burden.

**B.** **Defendant was seized when he complied with Detective McGee's request to exit the vehicle and he was placed in handcuffs.**

"Warrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment, unless an exception applies." *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010). One exception to the warrant requirement is a *Terry* stop and frisk. The Supreme Court held in *Terry v. Ohio*, 392 U.S. 1 (1968), that a police officer is permitted, consistent with the Fourth Amendment, to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30). "Any evidence obtained pursuant to an investigatory stop (also known as a '*Terry* stop' or a 'stop and frisk') that does not meet this exception must be suppressed as 'fruit of the poisonous tree.' " *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)).

The reasonable suspicion requirement "is only triggered by a seizure, which occurs when an officer applies physical force or when a person submits to an officer's 'show of authority[.]' " *United States v. Hester*, 910 F.3d 78, 84 (3d Cir. 2018) (citing *California v. Hodari D.*, 499 U.S. 621, 625 (1991)). Accordingly, "[t]he initial step in our suppression analysis is to determine whether a seizure has taken place and, if so, when the seizure occurred." *United States v. Brown*, 765 F.3d 278, 288 (3d Cir. 2014) (citing *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008)); *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) (in conducting a suppression analysis, the court "must first determine at what moment [the defendant] was seized"). Defendant claims he was seized when he complied with Detective McGee's request to lower his window. (Docket Nos. 38 at 5; 75 at 11-15). Conversely, the Government maintains that Defendant was not seized until after the detectives noticed the odor of marijuana, conducted a probable cause search of the vehicle, and discovered heroin in the glove box. (Docket Nos. 43 at 4, 7, 15; 74 at 7, 10). In this Court's

estimation, neither party's position is correct.  Rather, for reasons that follow, the Court finds that Defendant was seized when he complied with Detective McGee's request to exit the vehicle and he was placed in handcuffs.

A Fourth Amendment seizure "does not occur simply because a police officer approaches an individual and asks a few questions," *Florida v. Bostick*, 501 U.S. 429, 434 (1991), nor does it occur when an officer merely approaches a car in which a defendant is sitting.  *See United States v. Williams*, 413 F.3d 347, 354 (3d Cir. 2005) ("Merely approaching an individual, whether standing or in an automobile, does not constitute a seizure under the Fourth Amendment."). Likewise, an officer shining a flashlight into the interior of a vehicle from a position outside the vehicle does not constitute a seizure.  *See Texas v. Brown*, 460 U.S. 730, 739-40 (1983) ("It is likewise beyond dispute that Maples' action in shining his flashlight to illuminate the interior of Brown's car trenched upon no right secured to the latter by the Fourth Amendment."). Additionally, an officer's request for a suspect to lower his window is not, alone, a seizure.  *See Johnson*, 332 F.3d at 206 (finding that encounter became a seizure not at the initial request to lower window, but moments later when the officer persisted in his request); *United States v. Harrison*, Crim. No. 17-228, 2018 WL 4405892, at *5 (E.D. Pa. Sept. 17, 2018) (finding no seizure where the defendant did not allege that officer repeatedly commanded him to lower window).

Rather, a person is seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  To reiterate, "[a] seizure occurs when there is either (a) 'a laying of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.' " *Brown*, 448 F.3d at 245 (quoting *Hodari D.*, 499 U.S. at 626).  "[T]he test for existence of a 'show of authority' is an objective one:

11

not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person."[2]  *Id.* (quoting *Hodari D.*, 499 U.S. at 628).  The Supreme Court has articulated several factors to be considered as part of the objective inquiry, including the threatening presence of several officers, the fact that an officer displayed a weapon, some physical touching of the individual, or the use of a tone of voice or language to signify that compliance with the officer's request is required.  *Mendenhall*, 446 U.S. at 554.

Considering these principles, Defendant was not seized when Detective McGee approached his vehicle and shined a flashlight in the passenger window or tapped on it, which caused Defendant to lower the window.[3]  Even though Defendant's vehicle was parked next to the traffic stop vehicle where four detectives were located, Detective McGee initially approached Defendant's vehicle by himself.  When Detective McGee did so, his service weapon was holstered, he only signaled once for Defendant to lower his window, he did not use any language or tone of voice to convey a message that compliance with his request was required, and he did not physically touch Defendant at that time.  The fact that Detective McGee's police vehicle at least partially blocked Defendant's vehicle "is relevant, but not sufficient in itself to constitute a seizure."  *Harrison*, 2018 WL 4405892, at *5 (citing *United States v. Kim*, 25 F.3d 1426, 1431 (9th Cir.

---

2        Accordingly, Defendant's subjective testimony that he did not feel he was free to leave even prior to lowering his window, (Docket No. 73 at 48), is not determinative.

3        In view of the factors the Court is to consider when making credibility determinations, the Court does not credit Defendant's testimony that Detective McGee initially approached his vehicle on the driver's side.  According to Defendant's version, Detective McGee supposedly left his position next to the driver's side of the traffic stop vehicle while the stop was in progress and approached Defendant's vehicle from his driver's side, instead of the passenger side as Detective McGee testified.  In this Court's estimation, it is illogical that Detective McGee would have left his position next to the traffic stop vehicle when his attention was first drawn to Defendant's vehicle.  Rather, it would be more logical for Defendant McGee to stay in place given that he was only approximately five feet away from the passenger side of Defendant's vehicle and to initially approach the vehicle's occupant from that position.  Accordingly, the Court does not credit Defendant's testimony on this point because it does not withstand a common sense test of reason and logic.  *See Murphy*, 402 F. Supp. 2d at 569.

1994) (noting fact that police officer "partially blocked [defendant's] egress with his automobile informs but does not alter our conclusion")).  Detective McGee testified that he did not intend to box in Defendant's vehicle, but rather to park behind the traffic stop vehicle in a manner to prevent it from leaving, and it was possible that Defendant could have maneuvered out of the parking spot. (Docket No. 73 at 14, 20, 30).  Similar to *Harrison*, in the present matter, "while the street may have been blocked, a reasonable person would not immediately perceive that he was unable to end the interaction."  *Harrison*, 2018 WL 4405892, at *5.  Accordingly, considering the totality of the circumstances, Detective McGee's initial approach and signal to Defendant to lower his window did not implicate the Fourth Amendment.  *See, e.g., United States v. Gardenhire*, Crim. No. 15-87, 2017 WL 1022578, at *6-7 (W.D. Pa. Mar. 16, 2017) (holding that the officers approaching vehicle, knocking on windows of vehicle, asking the occupants to lower windows, asking questions, and shining flashlights into vehicle did not constitute a seizure and that the seizure occurred when the officers forcefully opened door to vehicle).

Although Detective McGee's initial interaction with Defendant did not implicate the Fourth Amendment, the encounter ripened into a *Terry* stop when Defendant complied with Detective McGee's request to exit the vehicle, and he was placed in handcuffs.  In this Court's opinion, that is the earliest point in time that a seizure occurred because a reasonable person in Defendant's position would feel that his liberty was restrained by a police officer taking that type of action.  *See Mendenhall*, 446 U.S. at 554.  The only way Defendant could have left at that point would have been to attempt to flee, which is something that a reasonable person would not do in such situation.

C.  **Detective McGee did not have reasonable suspicion to seize Defendant.**

Having concluded that Defendant was seized when he complied with Detective McGee's

13

request to exit the vehicle and he was placed in handcuffs, the inquiry now turns to whether the *Terry* stop was supported by "reasonable, articulable suspicion that criminal activity [was] afoot." *Wardlow*, 528 U.S. at 123.  For reasonable suspicion to exist, "[t]he officer must simply have some objective justification for the stop and must be able to articulate more than an 'unparticularized suspicion or hunch' that the suspect is engaged in criminal activity."  *Brown*, 765 F.3d at 290 (quoting *Wardlow*, 528 U.S. at 124).  "The ultimate question is whether a reasonable, trained officer standing in [Detective McGee's] shoes could articulate specific reasons justifying [Defendant's] detention." *Johnson*, 332 F.3d at 206.

In analyzing whether there was an objective basis for reasonable suspicion, we are to consider "the totality of the circumstances - the whole picture."  *Brown*, 448 F.3d at 247 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).  To that end, reasonable suspicion may be the result of any combination of one or several of the following factors: "specialized knowledge and investigative inferences," "personal observation of suspicious behavior," "information from sources that prove to be reliable, and information from sources that—while unknown to the police—prove by the accuracy and intimacy of the information provided to be reliable at least as to the details contained within that tip."  *Id.* (citations omitted).  Importantly, the reasonable suspicion analysis "must be limited to the facts known to the officers when they effected a *Terry* stop." *United States v. Lowe*, 791 F.3d 424, 435 (3d Cir. 2015).

Accordingly, when Defendant was seized – that is, when he complied with Detective McGee's request to exit the vehicle and was placed in handcuffs - Detective McGee was required to have reasonable suspicion to justify the seizure.  The Government suggests that Detective McGee's detection of marijuana emanating from the vehicle, coupled with his observation of the silhouette of a hand near the glove compartment and the sound of it closing, along with his

recognition of Defendant from a prior encounter, supplied reasonable suspicion. (Docket No. 74 at 7-8). Based on the record developed at the suppression hearing, the Court finds that Detective McGee did not have reasonable suspicion to seize Defendant for the following reasons: (1) the Court does not credit Detective McGee's testimony regarding the odor of marijuana; and (2) Defendant's behavior did not provide an objective basis for reasonable suspicion.

### 1.  The Court does not credit Detective McGee's testimony regarding the odor of marijuana.

"It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) (citations omitted). Thus, if the Court credits Detective McGee's testimony that he smelled the odor of burnt marijuana emanating from Defendant's vehicle, reasonable suspicion would exist to justify the seizure of Defendant at the time it occurred. However, after having observed Detective McGee's demeanor and manner while testifying, and thoroughly considering the totality of his testimony, the Court is unable to credit his testimony concerning the odor of marijuana coming from Defendant's vehicle.

Initially, the Court notes that Detective McGee testified numerous times throughout the hearing that he could not recall certain matters. (*See, e.g.*, Docket No. 73 at 20, 30 (could not recall for certain whether police vehicle was blocking Defendant's vehicle); 34 (unable to recall whether shined flashlight or tapped on window to get Defendant to lower window); 36 (unable to remember whether package of cigar blunt wrappers was open)). While the Court understands that the matters about which Detective McGee testified occurred over three years prior to the hearing, and appreciates his candor in admitting when he could not precisely recall a particular point, his inability to accurately recollect the matters at hand detracts from his credibility to some degree. *See Murphy*, 402 F. Supp. 2d at 569 (listing the witness's ability to accurately recollect the matters

at hand as a factor to consider in assessing credibility).

More importantly, however, Detective McGee's testimony concerning the odor of marijuana emanating from Defendant's vehicle ultimately does not withstand a common sense test of reason and logic considering the record developed at the suppression hearing. *See Murphy*, 402 F. Supp. 2d at 569 (specifying "the extent to which [the witness's testimony] withstands a common sense test of reason and logic" as a factor to consider in assessing credibility). Despite testifying that he smelled an odor of burnt marijuana when Defendant lowered the vehicle's window, Detective McGee did not see smoke coming out of the window, nor did he observe Defendant discard a marijuana cigarette butt out the window. (Docket No. 73 at 35, 36). Additionally, Detective McGee testified that he observed in the vehicle packaged cigar blunt wrappers,[4] which are used to smoke marijuana, but he could not remember whether or not the package of wrappers was open. (*Id.* at 23, 36). Most notably, no marijuana was found in the vehicle when it was searched.[5] (*Id.* at 35). The Government did not clarify at the hearing or in its post-hearing submission this discrepancy between Detective McGee's testimony that he smelled the odor of marijuana and the lack of any evidence of recently smoked marijuana. Accordingly, given the lack of evidence of recently smoked marijuana, the Court is unable to credit Detective McGee's testimony that he smelled burnt marijuana coming from Defendant's vehicle. *See United States v. Mercadel*, 75 F. App'x 983, at *5 (5th Cir. 2003) (police's failure to find any evidence of recently

---

[4]      Detective McGee explained that he was referring to a package of cigars, which can be split, emptied of the cigar contents, re-wrapped with marijuana inside and then smoked. (Docket No. 73 at 23).

[5]      Defendant testified that he did not smoke marijuana in the vehicle or before getting in it. (Docket No. 73 at 48). Even considering Defendant's obviously immense interest in the outcome of the proceeding, his testimony on this point is not unreasonable in light of the fact that no marijuana was found in the vehicle. *See Murphy*, 402 F. Supp. 2d at 571 ("Defendants in criminal cases always have much riding on the outcome and that is a legitimate matter to factor into an evaluation of the credibility of any defendant's testimony. However, it would be manifestly unfair and highly improper for that overtly or subliminally to be the determinative factor in judging a defendant's testimony. All of the circumstances must be considered and a credibility determination arrived at based on reason and logic.").

smoked marijuana supported district court's conclusion that officer's testimony that he smelled marijuana was not credible); *Harrison*, 2018 WL 4405892, at \*5-6 (finding officers did not have reasonable suspicion to seize the defendant, in part, because the court disbelieved the officers' testimony regarding the smell of marijuana); *United States v. Shields*, No. 05-20433-B, 2007 WL 4481147, at \*5 (W.D. Tenn. Dec. 18, 2007) (finding officer's testimony concerning marijuana smell not credible where there was no evidence to indicate that the defendants had been smoking marijuana in vehicle).

      **2.**   **<u>Defendant's behavior did not provide an objective basis for reasonable suspicion.</u>**

The Government also suggests that Detective McGee's observation of the silhouette of a hand near the glove box and the sound of it closing, along with his recognition of Defendant from a prior encounter, contributed to a finding of reasonable suspicion.  (Docket No. 74 at 7-8).  The Court disagrees.

The Supreme Court and the Third Circuit Court of Appeals have identified the following factors as suggesting suspicious behavior: (1) the presence of a suspect in a high crime area; (2) a suspect's presence on a street at a late hour; (3) a suspect's "nervous, evasive behavior," or flight from police; and (4) a suspect behaves in a way that conforms to an officer's specialized knowledge of criminal activity.  *Brown*, 448 F.3d at 251 (citations omitted).

In this case, only one of these factors was observed by Detective McGee – Defendant's presence in a high crime area.  That factor, in and of itself, is not sufficient to supply reasonable suspicion.  *See Wardlow*, 528 U.S. at 124 ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.").  Although it was already dark outside because the events in question took place on a January evening, Detective McGee encountered Defendant not at a late

hour, but rather shortly after 6:30 p.m. following initiation of the traffic stop on another vehicle. (Docket No. 73 at 11-12).   Detective McGee's attention was drawn to what turned out to be Defendant's vehicle when he heard the glove box shut, and he saw the silhouette of a hand near the glove box area on the passenger side of the vehicle, but he did not see Defendant shut the glove box.  (*Id.* at 16-17, 33).   Hearing a glove box shut and seeing the silhouette of a hand certainly does not, alone, provide reasonable suspicion that Defendant was engaged in criminal activity. *Cf. United States v. Broadus*, 291 F. App'x 486, 489 (3d Cir. 2008) (finding reasonable suspicion existed where, among other factors, defendant in car was "continually moving his left arm and hand to his left side . . . even though [the officer] had asked him to keep his hands in view"). Moreover, Detective McGee testified that he did not observe Defendant engage in any illegal activity prior to the time the window was lowered.  (Docket No. 73 at 37).   Additionally, Defendant did not exhibit nervous, evasive behavior; rather, Detective McGee testified that he was compliant and did not resist.  (*Id.* at 22).   Similarly, Defendant did not display any violent behavior and was compliant when Detective McGee previously interacted with him.  (*Id.* at 27).   Overall, the Court finds that Defendant's behavior did not provide Detective McGee with reasonable suspicion to seize him.

In the final analysis, the record before the Court does not establish that law enforcement had reasonable suspicion that criminal activity was afoot to justify seizing Defendant when the *Terry* stop was effectuated, thus all evidence recovered as a result of the ensuing search of Defendant's vehicle and his person following his arrest is the "fruit of the poisonous tree" and must be suppressed.  *Brown*, 448 F.3d at 244 (citing *Wong Sun*, 371 U.S. at 487-88); *see also United States v. Herrold*, 962 F.2d 1131, 1137 (3d Cir. 1992) ("fruit of the poisonous tree" doctrine requires exclusion of tangible evidence seized during an unlawful search as well as derivative

evidence, both tangible and testimonial, acquired as a result of the unlawful search).

IV.   <u>**CONCLUSION**</u>

In summary, Defendant was seized when he complied with Detective McGee's request to exit the vehicle and he was placed in handcuffs.  At that moment, law enforcement lacked the necessary reasonable suspicion to justify the seizure and frisk of Defendant and the subsequent search of his vehicle and his person following his arrest.  Consequently, Defendant's Motion to Suppress Physical Evidence, (Docket No. 37), is GRANTED, and all evidence obtained in connection with these events of January 24, 2019 shall be excluded from use as evidence at the trial of this case.  In light of this ruling, Defendant's Second Motion to Suppress Evidence related to cell phones, (Docket No. 46), is DENIED AS MOOT.

An appropriate Order follows.

<u>*s/ W. Scott Hardy*</u>
W. Scott Hardy
United States District Judge

Date:  <u>August 1, 2022</u>

cc/ecf:  All counsel of record